(165 App. Div. 539)

### DOYLE et al. v. CITY OF TROY.

(Supreme Court, Appellate Division, Third Department. January 6, 1915.)

MUNICIPAL CORPORATIONS (§ 374*)—ACTION ON CONTRACT—PUBLIC WORK—SUFFICIENCY OF EVIDENCE—AMOUNT OF WORK.

Evidence in an action to recover on a quantum meruit for work done under contract with a city for a street improvement *held* not to sustain a referee's finding that plaintiff had excavated 1,711 yards of hard macadam and to show that he had excavated only 1,000 yards, of the reasonable value of $1,500.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 905, 910; Dec. Dig. § 374.*]

Appeal from Judgment on Report of Referee.

Action by Edward J. Doyle and another against the City of Troy. Judgment for plaintiffs, entered upon the report of a referee, and defendant appeals. Modified and affirmed.

---

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Charles I. Webster, of Troy, for appellant.
John J. McCall, of Albany, for respondents.

SMITH, P. J. In September, 1911, respondents entered into a written contract with the city of Troy to improve Oakwood avenue in said city. The contract called for widening the street and lowering and raising the grade at various places, including the construction of gutters, culverts, and catch-basins, as set out in the specifications in detail. Respondents thereafter began work about October 5th, and continued until January 9, 1912, when work was discontinued for the winter. Work was resumed on April 5th and continued until June 1st, at which time respondents notified the city in writing that the work under contract was completed. On May 14th respondent Doyle wrote to the city engineer, claiming that he had just learned that the grade stakes recently set for the work were not in accordance with the original plans and grades, but were at a lower elevation, thus increasing the cut on the work and decreasing the fill. He also claimed that this change of grade constituted a violation of the contract by the appellant. After respondents stopped work in June, a dispute arose between the parties as to whether the work contracted for had been in fact performed, and finally the city in the fall of 1912 completed the work claimed by it to have been left undone by respondents. Thereafter an action was brought by the contractors to recover for the work done by them on a quantum meruit. The case was tried before George Lawyer, Esq., as referee, and from the judgment entered upon his report this appeal is taken by defendant.

Respondents' total claim is made up of many items valued at the contract prices. Upon the trial all of these items and amounts, except two, were agreed upon by the parties. These two contested items were claimed by respondents to have been caused by the unauthorized change of grade during the progress of the work, as mentioned in the letter of May 14th. One was for 1,410 yards of hard macadam excavated, of the reasonable value of $1.50 per yard, or $2,115, and the other item was for 481 yards of earth re-excavated, of the reasonable value of 48 cents per yard, or $238.88. Upon the trial the respondents' pleadings were amended to increase this first item in accordance with the proof to 1,711 yards, or $2,566.50, and the referee has allowed in full this item as thus amended. The other item he cut down to 450 yards, or $216, and as such has allowed it. Although the evidence on this latter item is not altogether convincing, we think his finding thereon is not against the weight of evidence. With regard to the first item mentioned, however, a more serious doubt arises.

At the time this contract was entered into the contractors received from the city engineer a certain map or profile, and grade or slope stakes were set upon the street for their use. The work covered a distance of 1,500 feet along the street, and along the middle of the street ran a single track, with a switch, of the United Traction Company. It seems to have been contemplated by the original plans for

this street improvement that the track should be 5 inches above the "established grade" of the street, the crowned surface of the roadway then sloping away on either side of the track to the gutters, which were below this "established grade." On or about April 29th the grade stakes were set, which occasioned respondent's letter of May 14th; he claiming to have been personally away from the work for some days immediately prior to the date of the letter. Much of the evidence as to whether there was any change of grade is most confusing. But it seems to be admitted that there was a change, so the only question remaining is as to show how much work was done outside of the original contract in excavating the hard material from the surface of the roadway on account of this change of grade. The usual method of determining amounts of excavations is to take surveys before and after the work done, and then by plotting cross-sections to compute their areas, and then the cubical content of the excavation. If the surveys are accurately made, the rest of the work is merely mathematical. In this case this method was used by different witnesses, but with hopelessly divergent results. As stated, respondents claimed in their complaint for this road surface excavated 1,410 yards, and upon the trial offered evidence of 1,711 yards, while appellant's evidence showed only 139 yards excavated. Another witness testified that the total amount of all excavation performed on the entire contract was only 720½ yards. The different engineers who made and assisted in the various surveys and calculations were apparently competent and experienced, and we are unable to account for this marked discrepancy. Reference may be made, however, to one or two matters which may have contributed to bring about such diverse results. The surveys made by respondents' chief expert and by Doyle himself do not seem to have been in accord with the best engineering practice for accurate work, in that they did not know of or use all the bench marks or data used by the city engineers in making the original survey. Moreover, the later surveys were not all made immediately after the respondents stopped work on the job. A certain bench mark used was claimed to be 3 inches out of level; and the track, which was the highest part of the street, was finally left for several hundred feet some 2 or three inches above the exact grade called for by the city survey.

Turning, now, from the engineers' calculations, it may be helpful to consider any outside facts that may have a bearing on this point. It seems admitted that the intended change of grade was 5 inches only, and that the grade at the most was actually changed for 8 inches, if allowance is made for the error due to a bench mark being 3 inches too low. Respondent Doyle testified that the cut he made, due to the change of grade, extended only 1,050 feet. If, now, he had made a cut of 8 inches over the entire width of this 66-foot road, sidewalks, track, and all, for a distance of 1,050 feet, the amount of excavation would have been just 1,711 yards. A 5-inch cut would amount to 1,069 yards. But there is evidence by an engineer, who inspected this work after it was completed, that the only cut he found was for about 300 feet, and the track foreman of the Traction Company also testified that the track was not lowered for more than 300 feet of this en--

tire 1,500 feet of roadway covered by respondents' contract. The top of the rails was to be level with the surface of the ground, and the road was opened for use after respondents stopped work on June 1st. Consequently it seems most improbable that for most of this 1,050 feet respondents excavated either 5 or 8 inches between or immediately adjoining the rails of the track, as this would have left the track projecting 5 or 8 inches above the surface of the roadway. So from the estimates just given there would have to be large deductions made for roadway not excavated between and alongside of the rails. It follows, then, that the 1,711 yards of excavation allowed is greatly in excess of the work actually done.

Another circumstance to be noted is the fact that, as the grade stakes were not set until about a month before the work was ended, the 450 yards of earth excavation and 1,711 yards of hard macadam excavation claimed would appear to be excessive amounts of work for the pay roll shown during this period. Some of the men on the job were used at other work than excavating during this time, so it seems improbable that as much macadam excavation as claimed could have been done in this time in addition to the re-excavation already allowed for. An examination of the entire record leads, in our judgment, to the conclusion that this item of 1,711 yards is contrary to the weight of evidence, and that an allowance of 1,000 yards of macadam excavated would give to plaintiffs full compensation. The judgment should therefore be modified, by reducing the amount of recovery for hard macadam excavated due to change of grade to 1,000 yards, at $1.50 per yard, or $1,500.

Judgment affirmed, as modified, without costs of this appeal to either party. The finding of fact of which the court disapproves is that 1,711 yards of hard madacam were excavated by respondents, due to a change of grade, and we hereby find that 1,000 yards only were excavated, of the reasonable worth and value of $1,500. ·

Judgment modified, as per opinion, and, as modified, unanimously affirmed, without costs to either party. The finding of fact of which the court disapproves is that 1,711 yards of hard macadam were excavated by respondents, due to change of grade; and this court finds that 1,000 yards only were excavated, of the reasonable value of $1,500.